NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DENISE RAE WILTSEY,**

      **Plaintiff,**

**v.**              **Case No. 6:17-CV-2166-ORL-40KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Denise Rae Wiltsey, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 9, 11, and the parties' Joint Memorandum, Doc. No. 15.[1]

## PROCEDURAL HISTORY.

  In 2014, Wiltsey filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.* She alleged that she became

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 12. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

disabled on January 13, 2014. R. 212. After this application was denied originally and on reconsideration, Wiltsey asked for a hearing before an Administrative Law Judge ("ALJ"). R. 148. An ALJ held a hearing on March 20, 2017. Wiltsey, accompanied by a lawyer, and a vocational expert ("VE") testified at the hearing. R. 72-98.

After considering the hearing testimony and the evidence in the record, the ALJ found that Wiltsey was insured under OASDI through September 30, 2019. The ALJ concluded that Wiltsey had not engaged in substantial gainful activity since the alleged disability onset date. R. 30.

The ALJ found that Wiltsey had the following severe impairments: cervicalgia, status post cervical fusion; right knee crepitus; a history of deep vein thrombosis; asthma; chronic obstructive lung disease; and, degenerative disc disease of the lumbar spine. *Id.* The ALJ concluded that Wiltsey did not have a severe mental impairment. *Id.* The ALJ also found that Wiltsey did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 31.

The ALJ found that Wiltsey had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [S]he is limited to frequent overhead reaching bilaterally. She can . . . occasionally climb ramps and stairs. She can occasionally balance, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds. She requires the ability to alternate sitting and standing every 30 minutes, however she would be able to remain on task. She must avoid hazards such as moving mechanical parts, unprotected heights, or operation of a motor vehicle. She must avoid concentrated exposure to humidity, wetness[,] extremes of hot and cold, and pulmonary irritants.

R. 32. In making this assessment, the ALJ gave little weight to opinions of David Vincent, M.D. R. 38-39. The ALJ also found that Wiltsey's reports of her functional limitations were not entirely consistent with the evidence in the record. R. 34.

2

NOT FOR PUBLICATION

After considering the testimony of the VE, the ALJ found that Wiltsey was able to perform her past relevant work as a front desk receptionist as generally performed. R. 39. Therefore, the ALJ found that Wiltsey was not disabled. R. 40.

Wiltsey requested review of the ALJ's decision by the Appeals Council. R. 209. On November 29, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 1-4.

Wiltsey now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Wiltsey having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Wiltsey's privacy to the extent possible.

*Statements and Hearing Testimony*.

Wiltsey was born in 1955. R. 212. She completed one year of college. R. 78. She previously worked as a unit secretary and a nursing care partner in a healthcare business. R. 78-

79.  She had also worked as a receptionist.  R. 80.  She stopped working on January 13, 2014.  R. 79.

Wiltsey had neck fusion surgery in March 2014 following an injury at work the previous year.  R. 81.  The surgery resolved the problems in her neck until she was in an accident when a deer hit her car about three months after the surgery.  R. 81-83.  A revision to her cervical fusion surgery was done in October 2014.  R. 83.  She was out-of-work following that surgery until January 2015.  *Id.*

Wiltsey also had back surgery in 2004.  Later, she experienced back pain and underwent a variety of pain management treatments.  R. 83-84.  She did not suffer side effects from medication.  R. 90.  Wiltsey testified that she continued to have severe low back pain which limited her ability to lift comfortably to five pounds.  R. 86.  She also suffered from restless leg syndrome.  R. 84.

Wiltsey had asthma and COPD, which were pretty much controlled with medication.  R. 84.  She also sought emergency department treatment in February 2017 for right leg deep vein thrombosis ("DVT").  She testified that the symptoms in her right leg had pretty much resolved with medication.  R. 85-86.

Wiltsey testified that she slept sporadically due to restless leg syndrome.  R. 86-87.  During a typical day she would do some cleaning if she was able to do so.  She was able to make a sandwich or a cup of soup.  She did not need assistance with personal hygiene.  R. 87.  Wiltsey testified that she was able to drive back and forth to the doctor's office and to physical therapy.  R. 78.  Occasionally she went out to eat.  She could not sit at movie theaters because of her restless legs.  She estimated that she could walk about three blocks.  She could stand for thirty minutes at

one time.  R. 88.  She had bad days after she did too much, such as vacuuming and dusting.  R. 92.

She testified that she would have difficulty returning to her job as a receptionist because holding a phone caused her neck to hurt and her neck problems made it difficult for her to look up or down to use a computer.  She could not sit for long periods and needed to walk around from time to time.  She would lie down during the day when she was in a lot of pain.  R. 92-93.

*Medical Records*.

The medical records reflect that Wiltsey received treatment for asthma and allergies.  R. 389-92.  The records also include diagnoses of cervical degenerative disc disease, diabetes mellitus, and restless leg syndrome.  *E.g.,* R. 464, 489.  Wiltsey also complained of right foot pain.  R. 546.

On May 14, 2014, Wiltsey complained of pain in her right knee.  An x-ray showed a normal knee with a small superior patellar enthesophyte.  John M. Morina, M.D., recommended physical therapy.  R. 473, 519, 526.  In June 2014, a treatment record reflects decreased range of motion and tenderness in the lumbar back over the SI joints bilaterally.  R. 478.

Before the alleged disability onset date, Wiltsey received cervical facet injections and cervical epidural steroid injections for left-sided neck pain, cervical facet arthrosis and C6-7 disk protrusion.  R. 394, 404, 414, 418, 436.  On October 16, 2013, Martin V. Ton, M.D., performed a radiofrequency ablation, medial branch nerves, at C4, C5 and C6.  R. 445.  Thereafter, Wiltsey continued to complain of severe neck pain radiating into her left arm.  R. 646.  Scott I. Horn, D.O., noted that an MRI of the cervical spine showed multilevel degenerative facet arthropathy and foraminal stenosis with no significant central stenosis.  *Id.*; R. 653-54, 723-24.

NOT FOR PUBLICATION

Dr. Vincent, a neurosurgeon, began treating Wiltsey in February 2014 for complaints of neck and left arm pain. R. 930, 1051-53, 1130-32. On February 11, 2014, he placed Wiltsey on no work status until after her surgery. R. 1122; *see also* R. 1155. In April 2014, Dr. Vincent performed cervical discectomies and fusion with a plate. R. 861. Wiltsey's limitations on discharge were no bending, lifting or straining; walking as tolerated; and use of a neck collar. R. 863, 871-73. Wiltsey participated in physical therapy. *E.g.,* R. 1107-12, 1429-31. In June 2014, Wiltsey complained of continuing neck pain with numbness down her right arm to the fingers. R. 976. Upon examination, Wiltsey demonstrated significant cervical motion restrictions and painful shoulder motion with decreased strength. R. 978. Dr. Vincent continued her in out of work status. R. 1332, 1339.

On August 5, 2014, Kevin F. Bonner, M.D., and Jason A. Grahame, MPA, PA-C, examined Wiltsey for complaints of right shoulder pain. Pain was documented on range of motion. An MRI was ordered. R. 1390-91. The MRI revealed a lot of artifacts from previous surgeries. Dr. Bonner and PA Grahame observed crepitation in the right shoulder and positive impingement signs, with well preserved strength. A Kenalog injection was administered. Wiltsey would participate in physical therapy when cleared by Dr. Vincent. R. 1387-89.

In August 2014, a deer hit Wiltsey's car while Wiltsey was driving. R. 969, 1422. Subsequent imaging studies showed a fracture through a surgical screw from the earlier cervical surgery. R. 988, 992. Wiltsey also had pain in both shoulders. R. 994, 1005. As of August 13, 2014, Dr. Vincent continued Wiltsey on no work status due to her surgery and rehabilitation of her shoulder injury. R. 967. Wiltsey again participated in physical therapy. *E.g.*, R. 1414-16. On September 16, 2014, Dr. Vincent wrote a letter to a court asking for Wiltsey to be excused from

jury duty due to "constant neck and upper extremity pain that becomes increased with prolonged sitting and activity," regular physical therapy and pain management. R. 957. After examining Wiltsey on September 29, 2014, Dr. Vincent opined that Wiltsey would need revision surgery due to pseudarthrosis at C5-C6. R. 1364.

On October 8, 2014, Firas Beitinjaneh, M.D., examined Wiltsey for restless leg syndrome. Wiltsey also reported chronic low back pain intermittently radiating to the right leg with intermittent numbness in her feet. R. 1374. Dr. Beitinjaneh opined that Wiltsey's symptoms in her lower extremities were consistent with restless leg syndrome. He ordered nerve conduction studies. R. 1376. Those studies did not show evidence of peripheral neuropathy in the lower extremities. R. 1383.

Wiltsey underwent a second cervical surgery on October 14, 2014 to repair a displaced cervical disc due to hardware failure from the previous surgery. R. 882, 935-39, 1407-11. On October 14, 2014, Dr. Vincent prepared a form stating that Wiltsey was unable to lift, bend, push, pull, and sit and stand for prolonged periods. He indicated that she would be off work until approximately January 2015. R. 930-31. On November 5, 2014, Dr. Vincent completed the medical portion of a short-term disability application. He indicated that Wiltsey could not lift/carry/push/pull or operate a motor vehicle. R. 886-89. Dr. Vincent wrote that Wiltsey could return to work in approximately January 2015. R. 888.

On January 23, 2015, Wiltsey told Dr. Beitinjaneh that she continued to have problems with restless leg syndrome and left sciatic pain. R. 1378. On physical examination, Dr. Beitinjaneh found 5/5 strength in the extremities and a normal base gait. He referred Wiltsey to Dr. Ton for pain management. R. 1380. Dr. Ton administered epidural steroid injections. R. 1617-52. On

March 11, 2015, Dr. Ton told Wiltsey to avoid any exacerbating activities, with no heavy lifting or bending or twisting while lifting. R. 1635.

On January 27, 2015, Wiltsey told Dr. Bonner that her right shoulder was a lot better following the injection. Wiltsey could lift her arm overhead. Dr. Bonner opined that her strength was 5-/5. He recommended that Wiltsey avoid heavy lifting and overhead lifting. R. 1387.

On February 9, 2015, Dr. Vincent opined that Wiltsey was at maximum medical improvement, and that she would be starting physical therapy. He recommended a functional capacity evaluation at the end of physical therapy to determine her work capacity and restrictions. R. 1400. On March 2, 2015, Dr. Vincent wrote after examining Wiltsey that she was doing well from the standpoint of her cervical spine, but she was experiencing severe low back and left leg pain that did not respond to an epidural steroid injection. His diagnoses included lumbago, and he ordered an MRI of the lumbar spine. R. 1442-44. The MRI revealed mild/moderate degenerative changes from L3-4 through L5-S1 with no significant central canal stenosis. R. 1483-84. Another imaging study revealed mild spondylolisthesis with flexion at L4-5 and lower lumbar spine facet arthropathy. R. 1485.

Upon examination on April 5, 2015, Dr. Vincent observed decreased cervical range of motion with some mild tenderness. Wiltsey's strength and sensation were intact. He told Wiltsey that she absolutely needed to continue her cervical range of motion exercises. Wiltsey asked for a disabled parking packet, and Dr. Vincent noted, "I think she very legitimately needs one." R. 1438-39.

Wiltsey sought treatment from Zachery Barnett, D.P.M., in August 2016 for pain in both of her feet. Dr. Barnett observed tenderness on palpation at the Achilles tendon insertion. His

diagnoses were tendonitis of the right and left Achilles tendons. He recommended an orthotic insert. R. 1729-31.

In January 2017, Wiltsey again experienced pain in her neck, for which she participated in physical therapy. R. 1828-33.

In February 2017, Wiltsey sought emergency department treatment for pain in the right calf. A Doppler study revealed DVT, which was treated with medication. R. 1841-53.

Wiltsey had follow-up treatment by ARNP Sharon Yelle. Yelle scheduled a steroid injection for Wiltsey's complaint of right shoulder pain. ARNP Yelle's functional assessment was as follows:

> Patient is able to perform the following by self: Feeding, [Toileting], Selecting Proper Attire, Grooming, Maintaining Continence, Putting on Clothes, Bathing, Walking and Transferring . . . , Reading, Speaking, Ambulating around the home, Remembering schedule of daily activities . . . , Managing Finances, Handling transportation . . . , Shopping, Preparing Meals, Using the telephone and other communication devices, Managing Medications, Housework and Basic Home Maintenance.

R. 1875-79.

*VE Testimony.*

During the ALJ's hearing, the VE testified that Wiltsey's previous work as a receptionist would be classified as a front desk receptionist, a sedentary job. R. 95. The ALJ asked the VE to assume an individual of Wiltsey's similar age, education and experience who could perform sedentary work, with frequent overhead reaching bilaterally; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; but no climbing of ropes, ladders or scaffolds. The person would need to alternate positions from sitting and standing about every thirty minutes while remaining on task. The person could not be exposed to hazards and must

NOT FOR PUBLICATION

avoid concentrated exposure to humidity and wetness, extremes of hot and cold and pulmonary irritants. R. 95. The VE testified that this person could perform the job of receptionist, probably using a headset but not a computer. R. 95-96.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Wiltsey raises two assignments of error. First, she argues that the ALJ erred by failing to discuss and weigh opinions of Dr. Vincent contained in two documents: a letter asking that Wiltsey be excused from jury duty; and, a treatment record discussing Wiltsey's request for a disabled parking packet. Second, she submits that the ALJ erred in his determination that her reports of her functional limitations were not entirely consistent with the medical evidence and other evidence in the record. She asks that the Court reverse the final decision of the Commissioner and remand the matter for further proceedings. These are the only issues I will address.

*Opinions of Dr. Vincent.*

The ALJ gave little weight to Dr. Vincent's February 11, 2014 opinion that Wiltsey should remain off work until after her surgery, stating that this indicated only a temporary rather than a permanent restriction. R. 38. The ALJ also gave little weight to Dr. Vincent's opinions in October and November 2014 that Wiltsey was unable to bend, sit or stand for long periods without pain and that she could not work from October 14, 2014 through January 2015. The ALJ wrote that these restrictions were for less than 12-months duration and the forms were completed with respect to an FMLA application which has different standards than the SSA disability evaluation. R. 38-39. In the Joint Memorandum, counsel for Wiltsey does not specifically challenge the ALJ's decision to give little weight to these opinions.

NOT FOR PUBLICATION

Instead, counsel for Wiltsey argues that the ALJ erred by failing to consider and state the weight given to two other documents prepared by Dr. Vincent: the letter asking that Wiltsey be excused from jury duty; and, a treatment record discussing Wiltsey's need for a disabled parking permit. Counsel for the Commissioner correctly responds that an ALJ is not required to discuss each piece of evidence in the record. In *Dyer v. Barnhart*, 395 F.3d at 1206, the U.S. Court of Appeals for the Eleventh Circuit stated: "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The ALJ stated that she carefully considered the entire record. R. 30. In the decision, the ALJ reviewed Wiltsey's statements and the medical records. R. 33-38. Therefore, this is not a case in which the ALJ's decision was a broad rejection of the evidence.

Moreover, the jury excuse letter that counsel for Wiltsey contends the ALJ did not consider and properly weigh is cumulative of other evidence the ALJ specifically addressed. In the jury excuse letter, Dr. Vincent wrote that Wiltsey's constant neck and upper extremity pain increased with prolonged sitting and activity. This opinion is consistent with Dr. Vincent's opinions in the FMLA forms completed in October and November 2014 in which he stated that Wiltsey could not sit or stand for prolonged periods without pain.

As for Wiltsey's request for a disabled parking packet, Dr. Vincent wrote in April 2015 that he believed that Wiltsey very legitimately needed a disabled parking permit. R. 1437-38. There is, however, no evidence that the state issued Wiltsey a disabled parking permit and no showing

that, if such a permit were issued, the state applied standards for determining disability that are similar to the standards applied by the SSA. *See, e.g., Gjersten v. Comm'r of Soc. Sec.*, No. 2:17-cv-48-FtM-CM, 2018 WL 1313118, at *4 (M.D. Fla. March 14, 2018) (citations omitted); *Riccard v. Comm'r of Soc. Sec.*, No. 6:11-cv-1612-Orl-DAB, 2012 WL 6106408, at *7 (M.D. Fla. Dec. 10, 2012) (citations omitted). Therefore, the failure to consider and weigh Dr. Vincent's statement about Wiltsey's need for a disabled parking permit is harmless, at best.

For these reasons, I recommend that the Court find the first assignment of error is not meritorious.

*Credibility*.

In the second assignment of error, counsel for Wiltsey argues that the ALJ did not properly evaluate her credibility because he rejected her reports of pain and limitations without articulating reasons supported by substantial evidence, as required by *Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991). More specifically, it appears that counsel for Wiltsey contends that the ALJ disregarded Wiltsey's statements about her limitations and relied exclusively on the medical opinions in the record. Careful reading of the ALJ's decision and the record as a whole undermines this argument.

The ALJ summarized Wiltsey's reports of her limitations. Among other things, he noted, that Wiltsey denied having side effects from pain medication, that her asthma was generally controlled with inhalers and medication, and that she testified she could not work as a receptionist because she could not hold a phone up to her ear and she had troubling looking up at a computer. R. 33. The ALJ also credited Wiltsey's reports of limitations but found that the record as a whole did not support the severity of those reported limitations. R. 39.

NOT FOR PUBLICATION

Moreover, in determining that there were jobs in the national economy that Wiltsey could perform, the ALJ expressly considered her testimony that she could not hold up a phone or look up at a computer. The ALJ inquired of the VE as follows:

Q. Because, what I'm thinking of is a receptionist position, where they're at a desk, and they could probably have a headset.

A. Right.

Q. They're not using a computer.

R. 95-96. These inquiries provide further support for the conclusion that the ALJ did not disregard Wiltsey's testimony about her functional limitations.

For these reasons, I recommend that the Court find that the second assignment of error is unavailing.

## RECOMMENDATION.

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

## Notice to the Parties.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** this 19th day of October 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE
